Affirmed and Memorandum Opinion filed February 24, 2009








Affirmed and Memorandum Opinion filed February 24,
2009.                              

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00785-CV

_______________

 

IN THE INTEREST OF S.J.

 

                                                                                                                                               


On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 2006-09754J

                                                                                                                                                

 

M E M O R A N D U M  O P I N I O N

Appellant,
Q.J., appeals a decree terminating the parent-child relationship between
appellant and her minor daughter, S.J.  In her sole issue, appellant contends
the evidence is factually insufficient to support the trial court=s findings that (1) appellant
committed one of the statutory grounds for termination and (2) termination is
in the best interest of the child. Because all dispositive issues are settled
in law, we issue this memorandum opinion and affirm.  See Tex. R. App.
P. 47.4. 

 








I.  Background[1]  

S.J. was
born in Houston on July 8, 2006, when appellant was seventeen years old.  On
October 25, 2006, The Department of Family and Protective Services (Athe Department@) took possession of S.J., based on Amedical neglect,@ and filed a petition for protection,
conservatorship, and termination of appellant=s parental rights if reunification
were not possible.  On the same day, the trial court signed an emergency order
appointing the Department as temporary sole managing conservator and set a
hearing for November 7, 2006.  After the November 7 hearing, the trial court
signed another order, retaining the Department as temporary managing
conservator, but placing S.J. temporarily with her maternal grandmother,
Bridgetta McCarthy, who then lived in Houston, and requiring that appellant
complete a family service plan.

On
December 12, 2006, the trial court signed another temporary order, requiring
appellant to complete the service plan that had been outlined by the Department
and other similar tasks specified in the order.  Appellant never completed any
tasks outlined in the service plan and order.  In January 2007, appellant left
Texas to reside in Louisiana.  S.J. remained in McCarthy=s temporary care.  In an amended
petition filed in March 2007, the Department renewed its request for
termination if reunification were not possible and requested McCarthy be named
permanent managing conservator.  However, S.J. was removed from McCarthy=s care sometime in Spring of 2007
based on the Department=s determination of Aneglectful supervision@ and placed in foster care, where she
remained at the time of trial.[2]








On
August 16, 2007, the court conducted a bench trial on the Department=s request for termination of parental
rights.  At the beginning of trial, the Department orally non-suited its
previous request that McCarthy be named permanent managing conservator.  On
August 30, 2007,  the trial court signed a decree terminating the parent-child
relationship between appellant and S.J. and appointing the Department as sole
managing conservator.  

II.  Standard of Review 

To
terminate a parent‑child relationship, a trial court must find by clear
and convincing evidence (1) the parent has committed one or more of the acts
outlined in Texas Family Code section 161.001(1) as grounds for termination and
(2) termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001 (Vernon 2008).

Involuntary
termination of parental rights involves fundamental constitutional rights.  Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  Due process requires application
of the clear-and-convincing-evidence standard in a termination trial.  In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see Tex. Fam. Code Ann. ' 161.001.  A>Clear and convincing evidence= means the measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.@  Tex. Fam. Code Ann. ' 101.007 (Vernon 2008).








When
reviewing factual sufficiency under the clear-and-convincing-evidence standard,
we must consider all the evidence equally, both disputed and undisputed, to
determine whether a factfinder could reasonably form a firm belief or
conviction about the truth of the allegations.  See In re J.F.C., 96 S.W.3d
at 266.  We consider whether disputed evidence is such that a reasonable
factfinder could not have resolved that disputed evidence in favor of its
finding.  Id.  AIf, in light of the entire record, the disputed evidence that
a reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.@  Id.

III.  Analysis

In this
case, the trial court found by clear and convincing evidence that appellant
committed four acts outlined in section 161.001(1) and termination of the
parent-child relationship is in S.J.=s best interest.  Appellant
challenges all of these findings.  

A.        Statutory
Ground for Termination under Section 161.001(1)(E)

We
conclude the evidence is factually sufficient to support the trial court=s finding on the statutory ground for
termination under section 161.001(1)(E).  The trial court found that appellant Aengaged in conduct or knowingly
placed the child with persons who engaged in conduct which endangers the physical
or emotional well‑being of the child.@ See Tex. Fam. Code Ann. ' 161.001(1)(E).  Because the
Department was required to prove only one ground outlined in section 161.001, see
Tex. Fam. Code Ann. ' 161.001, we will discuss only the  endangerment finding
relative to the statutory grounds for termination.[3] 
Under section 161.001(1)(E), Aendanger@ means Ato expose to loss or injury; to jeopardize.@  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); see
In re J.I.T.P., 99 S.W.3d 841, 844 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 








Pertinent
to our review, at trial, the Department presented (1) testimony of Adwoa
Yeboah, the Department caseworker assigned to S.J.; and (2) a Permanency Plan
and Permanency Progress Report (Athe report@) prepared approximately a month
before trial, explaining the Department=s involvement with S.J.[4] 
Appellant did not appear at trial and presented only the testimony of her
mother, Bridgetta McCarthy.[5] 

Yeboah=s testimony and the Department=s report showed that appellant
engaged in conduct which endangered S.J.=s physical well-being by neglecting
necessary medical care for the child.  Specifically, S.J. was born two months
prematurely.  As a result, she suffered sleep apnea, severe acid reflux, and
respiratory distress.  She was placed in the neonatal intensive-care unit of
the hospital.  While S.J. was hospitalized, appellant visited sporadically and
rarely called to check on her.  S.J. was released from the hospital
approximately three months after birth.  She required an oxygen tank and apnea
monitor for respiratory distress and was prescribed two medications for acid
reflux.  After S.J.=s release, appellant did not give S.J. the medication. 
Without the medication, S.J. could have asphyxiated on undigested milk. 
Further, appellant did not take initiative to schedule S.J.=s follow-up doctor=s appointments.  Appellant also left
S.J. at home alone with a ten-year-old aunt who did not have the proper
knowledge to care for a Amedically fragile child.@  Approximately three weeks after
S.J.=s release from the hospital, the
Department took possession based on Amedical neglect.@[6]








At
trial, appellant did not controvert the evidence showing she neglected S.J.=s medical needs.[7] 
On appeal, appellant advances little argument to challenge the endangerment finding. 
She merely challenges the allegation she left S.J. alone with a ten-year-old
and states there was no medical evidence appellant=s actions harmed S.J. 

However,
while Aendanger@ means Amore than a threat of metaphysical
injury or the possible ill effects of a less‑than‑ideal family
environment,@ the endangering conduct need not be directed at or cause actual injury
to the child.  Boyd, 727 S.W.2d at 533; see In re J.I.T.P., 99
S.W.3d at 844.  Further, endangerment can be exhibited through actions and
omissions.  In re J.I.T.P., 99 S.W.3d at 844.  Neglect of a child=s physical needs Acan be just as dangerous to the well‑being
of a child as direct physical abuse.@  In re M.C., 917 S.W.2d 268,
270 (Tex. 1996).

Appellant=s failure to give S.J. medication
prescribed for serious medical conditionsCto prevent her from asphyxiating on
milkCestablished that appellant exposed
S.J. to physical harm.  Accordingly, we conclude the trial court could have
reasonably formed a firm belief or conviction appellant engaged in conduct that
endangered S.J.=s physical well-being.

B.        Best
Interest of the Child

Appellant
also contends the evidence is factually insufficient to support the trial court=s finding that termination is in S.J.=s best interest.  There is a strong
presumption that preserving the parent‑child relationship is in the best
interest of a child.  See In re J.I.T.P., 99 S.W.3d at 846 (citing Tex.
Fam. Code Ann. '' 153.131(b), 153.191, 153.252 (Vernon 2008)).  The Department
bears the burden to rebut this presumption.  Id. (citing Hall v.
Harris County Child Welfare Unit, 533 S.W.2d 121, 122B23 (Tex. Civ. App.CHouston [14th Dist.] 1976, no writ)).








The
Texas Supreme Court has compiled non-exclusive factors to consider when
determining the best interest of a child including (1) the child=s desires, (2) the child=s emotional and physical needs now
and in the future, (3) the emotional and physical danger to the child now and
in the future, (4) the parental abilities of the individuals seeking custody,
(5) the programs available to assist these individuals to promote the best
interest of the child, (6) the plans for the child by these individuals or by
the agency seeking custody, (7) the stability of the home or proposed
placement, (8) the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not proper, and (9) any excuse for
the acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367,
371B72 (Tex. 1976); see In re J.I.T.P.,
99 S.W.3d at 846.  In this case, the record contains evidence pertinent to all
factors except the first because S.J. was too young to express her desires.  We
will discuss together the evidence pertaining to these factors, rather than
divide our discussion according to each factor, because the evidence is overlapping
relative to the various factors.

We have
discussed the evidence showing appellant previously neglected S.J.=s medical needs.   When deciding
termination is in S.J.=s future best-interest, the trial court could have reasonably
considered that appellant neglected her newborn during such a critical time.  See
In the Interest of C.H., 89 S.W.3d 17, 28 (Tex. 2002) (recognizing evidence
establishing statutory ground for termination may also be probative of
best-interest issue); In re B.K.D., 131 S.W.3d 10, 17 (Tex. App.CFort Worth 2003, pet. denied)
(recognizing fact finder may infer that past conduct endangering child=s well being may recur in the future
if child is returned to parent).








On
appeal, appellant seems to acknowledge her previous neglect of S.J.=s medical needs but contends the
evidence is nonetheless factually insufficient to support the best-interest
finding.  Appellant emphasizes (1) at the time of trial, S.J. was one year old,
as opposed to a newborn, the child no longer had special needs, and there was
no evidence of any future special needs; (2) appellant was only seventeen years
old when S.J. was born and was living in an unfamiliar city (Houston) after
being displaced from New Orleans due to Hurricane Katrina; and (3) there was no
evidence appellant has substance-abuse issues, a history with the Department,
or a criminal record.[8]  Appellant also
asserts the Department offered little evidence regarding its proposed plans for
S.J., whereas appellant requested a home study for her aunt, who lives in
Louisiana, and appellant=s mother, Bridgetta McCarthy, testified she wishes to raise
the child.

Citing
all these factors, appellant contends she Awould do much better@ in the future, with support from
family members, despite her behavior when the child had special needs. 
Appellant argues it would be more beneficial for S.J. to be raised by appellant
with assistance from relatives than be adopted by a non-relative or face a Aconstant shuffle@ between foster homes in the event of
termination. 

However,
a child as young as S.J. obviously has regular needs requiring constant
attention.  Because appellant failed to appear at trial, she did not offer her
age and post-Katrina difficulties as purportedly sufficient excuses for the
past neglect or assure the court she will be more attentive to S.J.=s future needs.  Appellant merely
suggests the trial court should have inferred that she will change her
behavior.  Nonetheless, the trial court could have decided that appellant=s age and post-Katrina difficulties
were insufficient excuses for neglecting her newborn and questioned whether
appellant, who was only a year older at the time of trial, would repeat her
behavior if a similar difficulty arose.[9]  In fact,
appellant=s failure to appear at trial itself belies her claim that she intends to
be more attentive to S.J.








Moreover,
the following uncontroverted evidence demonstrates appellant has consistently
neglected, and exhibited almost a complete lack of interest in, S.J. and
supports the trial court=s implicit finding that appellant is not able or willing to
properly care for S.J. in the future:

!                  
McCarthy, appellant=s mother, testified that, at the beginning, appellant
indicated she did not want to keep the baby;

!                  
McCarthy actually opined that
appellant=s parental rights should be terminated so S.J. could
obtain a better home, preferably with McCarthy; because McCarthy=s testimony was presented to counter the Department=s request for termination, she likely did not
understand the ramifications of termination, but she believed, at least, that
appellant should not raise S.J.;

!                  
for about three months after the
Department took possession of S.J., appellant lived in Houston before leaving
for Louisiana; even when she resided in the same city as S.J., appellant did
not visit the child, pay support, or make any gifts to S.J., although Yeboah
was unaware of any order prohibiting such contact; see Dupree v.
Texas Dept. of Protective and Regulatory Servs., 907 S.W.2d 81, 87 (Tex.
App.CDallas 1995, no writ) (considering, relative to
best-interest finding in termination proceeding, father=s failure to visit child for six months after release
from prison could indicate lack of interest);

!                  
appellant left Houston to live in
Louisiana during the same month S.J. was declared a Awell child@ by
her doctors; although appellant was originally from Louisiana, she offered no
explanation for why she did not remain in Houston to maintain some relationship
with her baby;

!                  
even after appellant moved to
Louisiana, she failed to visit or send money or gifts, and her limited
involvement with the child consisted of maintaining phone contact with Yeboah;

!                  
appellant failed to complete any
of the tasks outlined in the family service plan and the trial court=s temporary order, although the tasks were clearly
designed to help appellant successfully parent S.J. and the order reflected
that completion of the tasks was required to obtain return of the child; see
In re M.R., 243 S.W.3d 807, 821 (Tex. App.CFort Worth 2007, no pet.) (recognizing parent=s failure to comply with family service plan may be
factor supporting best-interest finding);[10]








!                  
when appellant called Yeboah after
moving to Louisiana to inquire about completing the family service plan, Yeboah
presented two options: (1) return to Houston to obtain the services from the
Department; or (2) complete the services in Louisiana if appellant paid for
them herself; although appellant told Yeboah she could not come to Houston or
afford the services, at trial, appellant offered no reason she could not return
to Houston to obtain the services;

!                  
appellant had never shown Yeboah
proof of stable employment, housing, and environment and offered no plans on Awhat she would do@ if
S.J. were returned to her; when Yeboah spoke with appellant within a week
before trial, appellant said that she did not have a job or a place to live and
was thus staying with an aunt; see id. (recognizing parent=s inability to maintain stable home may be factor
supporting a best-interest finding);[11] and

!                  
although
existence of substance-abuse issues, a Department history, or criminal record
might be pertinent in a termination proceeding, the lack of these problems in
appellant=s case did not negate the evidence demonstrating she neglected and showed
little interest in S.J.[12]








In
addition, the trial court could have reasonably formed a firm belief or
conviction that termination of appellant=s parental rights is in S.J.=s best interest despite appellant=s claim that relatives would support
her in raising S.J., which is preferable to adoption by non-relatives or
placement in foster homes.  We initially note Yeboah testified the Department would
consider a family member for permanent placement.  A home study was in progress
relative to appellant=s aunt, who remained a possibility for permanent placement,
although, as we have mentioned, the Department had eliminated McCarthy
(appellant=s mother) as a permanent placement.  Yeobah also testified S.J.=s current foster parents wish to
adopt her.  At the time of trial, S.J. had resided for about five months in
this foster home which provided a safe, structured, and nurturing environment
where S.J.=s social, emotional, and physical needs were met.  Yeboah visited S.J. in
this home within a week before trial and reported she was Adoing very well.@  Thus, there were options for a
permanent home including a relative or the foster home in which S.J. was
thriving.  Even though the Department had not yet decided on an option,
appellant=s proposal that relatives could help her raise the child does not render
the evidence factually insufficient to support the best-interest finding. 

Appellant=s contentions regarding the
contemplated role of her relatives are somewhat inconsistent.  On appeal,
appellant primarily suggests she would raise S.J. jointly with relatives and
focuses on her own mother; appellant asserts S.J. would Amost likely@ be raised in a household with
appellant and McCarthy.  However, appellant presented no evidence that a
joint arrangement with McCarthy or any other relative was viable.  To the
contrary, at the time of trial, appellant lived in Louisiana, and McCarthy had
moved to Austin.  Further, as we have mentioned, appellant previously returned
to Louisiana while S.J. was living in Houston with McCarthy, thus negating that
appellant was interested in such an arrangement Although appellant provided the
Department with information to conduct a home study on the referenced aunt,
there was no evidence yet that the aunt was willing to help care for S.J.
Additionally, as we have discussed, appellant has implicitly and explicitly
indicated she does not even want the child; thus, mere availability of support
from relatives does not solve the issue of S.J.=s potentially being neglected by
appellant.








At other
points on appeal, appellant suggests S.J. be permanently placed with McCarthy
in lieu of termination.  In fact, the gist of McCarthy=s testimony was that she wished to
raise S.J. herselfCnot jointly with appellant.  As we have mentioned, McCarthy
actually opined appellant=s parental rights should be terminated.  However, McCarthy
had not filed a petition requesting to be named managing conservator in the
event of termination.  Instead, because her testimony was presented to counter
the Department=s request for termination, she was apparently expressing her wish to
raise S.J. in lieu of termination.

We
acknowledge McCarthy expressed devotion to S.J. because she, not appellant,
appeared at trial and testified she had cared for the child Asince day one@ and was protective of her.  McCarthy
indicated she generally maintains a stable lifestyle; she is employed as a
medical assistant, has a five-bedroom house, and five of her own children live
with her.   

However,
at trial, the Department articulated the reason it previously removed S.J. from
McCarthy=s temporary care and no longer
considered her a suitable permanent placement. According to the Department=s evidence, McCarthy left S.J. alone
with McCarthy=s eighteen-year-old daughter (appellant=s sister) while McCarthy went to
Austin for a job interview.  The sister took S.J. to Louisiana, and appellant
called Child Protective Services in New Orleans.  Appellant reported that her
sister brought S.J. to Louisiana because McCarthy had not given the sister
money to feed the child.  The Department retrieved S.J., and she was placed in
the foster home.

In
contrast, McCarthy denied leaving S.J. in the temporary care of her
eighteen-year-old daughter.  Rather, McCarthy claimed that she went with her
own sister and eighteen-year-old daughter to New Orleans.  While there,
McCarthy received a call requesting that she take a drug test in Austin related
to a job application.  She left S.J. with her sister who is thirty five years
old.  McCarthy was away from S.J. for only a day.








We find
no reason to intrude on the trial court=s implicit decision to believe the
Department=s account of this incident. See In re C.L.C., 119 S.W.3d
382, 391 (Tex. App.CTyler 2003, no pet.) (recognizing factual-sufficiency
standard applicable in termination proceeding retains deference for fact finder=s role as exclusive judge of the
credibility of witnesses and weight to be given their testimony).  Therefore,
the trial court could have rationally questioned whether McCarthy was a
suitable care giver based on her failure to provide money for S.J.=s food while McCarthy was away.

Moreover,
although McCarthy generally explained her living arrangements, she did not
provide any details on how she would care for such a young child while she was
working.  Considering this omission in her testimony and the above-cited
incident, the trial court could have been concerned that, when McCarthy needed
to be away from S.J., the child might be shuffled back and forth between Texas
and Louisiana rather than remain in a permanent, stable home.  See Dupree,
907 S.W.2d at 87 (recognizing, relative to best interest of child, need for
permanence is paramount consideration for child=s present and future physical and
emotional needs and goal of establishing stable, permanent home for child is
compelling interest of the government).[13] 
Consequently, the trial court could have found the Department articulated a
sufficient reason for refusing permanent placement with McCarthy in lieu of
termination and her desire to raise the child did not outweigh the ample
evidence showing termination of appellant=s parental rights is in S.J.=s best interest.  Accordingly, we
conclude the evidence is factually sufficient to support the best-interest
finding.

We
overrule appellant=s sole issue and affirm the trial court=s decree.

 

 

/s/        Charles
W. Seymore

Justice

 

Panel consists of Justices Yates, Seymore, and Boyce.









[1]  The proceeding below also pertained to the alleged
father, to whom appellant was not married.  At the termination trial, evidence
was presented on his identity, there was evidence he has had no  involvement
with S.J., and his parental rights were also terminated. Because only appellant
challenges termination, we set forth the background and evidence solely as it
pertains to appellant.





[2]  A Department caseworker testified, and McCarthy
indicated, S.J. was removed from McCarthy=s
care in March 2007; however, a report admitted at trial and other filings
indicated this action occurred in May 2007.  Regardless, S.J. was removed
sometime in Spring of 2007.





[3]  The trial court also found that appellant committed
the statutory grounds for termination set forth in sections 161.001(1)(B), (C),
and (N).  See Tex. Fam. Code Ann. ''
161.001(1)(B), (C), (N).





[4]  The other exhibits admitted at trial concerned the
Department=s service of citation on appellant and the alleged
father and attempts to determine paternity.





[5]  On appeal, appellant consistently refers to an
affidavit of a Department representative which was attached to the Department=s initial petition and set forth facts to support the
requested relief.  However, this affidavit is contained only in the clerk=s record and was not admitted at trial.  Therefore, we
will limit our review to the evidence admitted at trial.





[6]  In fact, appellant also neglected her own medical
well-being because, against the advice of medical personnel, she left the
hospital one day after giving birth to S.J. by C-section.  





[7]  The testimony of appellant=s mother concerned subjects arguably relevant to the Abest interest@
determination but did not contradict the evidence that appellant neglected S.J.=s medical needs.  





[8]  Appellant also claims she did not have
transportation to the hospital, but, in support, she cites the Department=s affidavit that was not admitted at trial.





[9]  Appellant cites the affidavit that was not admitted
at trial to support her assertion that she was residing temporarily in Houston
after being displaced because of Katrina.  However, the Department does not
seem to dispute that appellant is from Louisiana.  Nevertheless, appellant did
not offer to the trial court her post-Katrina displacement as an excuse for
neglecting S.J. 





[10]  In summary, the plan and temporary order required
appellant to participate in a psychological examination and counseling,
complete parenting classes, participate in drug assessment and remain drug
free, maintain stable housing, maintain stable employment, take classes to
obtain a GED, visit S.J. weekly, and attend all mandatory court hearings and APPT=s.@





[11]  Appellant complains Yeboah did not explain how she
knew appellant failed to complete her services and lacked stable employment and
housing. However, this contention would have more appropriately been raised as
a hearsay objection at trial, which appellant did not make, or by
cross-examining Yeboah on the accuracy of this information, which appellant did
not do.  At trial, Yeboah=s testimony on these subjects was not controverted or
otherwise challenged and thus factors into our review.





[12]  The Department presented evidence that appellant has
another child, older than S.J., who also did not live with appellant.  Because
the Department presented no evidence showing why this other child did not live
with appellant, we have not considered this fact in our evaluation.





[13]  The dispute on whether McCarthy left S.J. alone with
an eighteen year old seems immaterial absent information regarding the
capabilities of the particular eighteen year old.  It is McCarthy=s failure to leave money for food and the fact S.J.
was taken to Louisiana which could have concerned the trial court.